**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|   |   |
|---|---|
| **JAMAAR ROBINSON** | \* |
|  | \* |
| **Plaintiff,** | \* |
| v. | \*   Civil Case No. SAG-20-0686 |
|  | \* |
| **CITY OF HAGERSTOWN, MD,** *et al.*, | \* |
|  | \* |
| **Defendants.** | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Jamaar Robinson ("Robinson")[1] filed a Complaint against Defendants City of Hagerstown, Maryland ("the City") and Tyler Branche ("Branche") (collectively, "Defendants"), alleging violation of Robinson's constitutional rights pursuant to 42 U.S.C. § 1983, in addition to a state law claim for false arrest. ECF 6. Defendants filed a Motion to Dismiss, or, in the alternative, Motion for Summary Judgment, ECF 2 ("the Motion"). Robinson opposed the Motion, ECF 5, and Defendants filed a Reply, ECF 11. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be granted, and the Complaint will be dismissed without prejudice.

**I.   FACTUAL BACKGROUND**

The facts below are derived from Robinson's Complaint. Branche works as an officer for the Hagerstown Police Department ("HPD"). ECF 6 ¶ 3. On or about October 19, 2019, HPD officers, including Branche, responded to the Maryland Health and Wellness Center ("MHWC"), to address an ongoing dispute involving Robinson. *Id.* ¶ 6. The officers reviewed Robinson's identification, and spoke with other witnesses to resolve the situation without further incident. *Id.*

---

[1] Plaintiff's name is spelled in different ways in the record. The Court has deferred to the spelling in the Complaint.

When the investigation at MHWC concluded, Robinson proceeded to his vehicle. *Id.* However, the officers re-approached him, and demanded to see his identification again. *Id.* ¶ 7. The officers then placed Robinson under arrest, explaining that they had located a warrant for his arrest that had been issued in Pennsylvania. *Id.* ¶¶ 9, 10. Despite Robinson's protestations "that there had clearly been a misunderstanding," he was transported to the detention center for processing. *Id.* ¶¶ 10, 11.

Upon arrival at the Washington County Detention Center, HPD officers began to process Robinson. *Id.* ¶ 11. At that point, Robinson saw a photograph associated with the Pennsylvania warrant. *Id.* He told the officers that the photograph "clearly did not depict him." *Id.* Upon a review of that photograph and Robinson's Social Security number, HPD "immediately released" Robinson. *Id.* ¶ 12.

Following the incident, in the ensuing months, Robinson was "arrested twice more under the same warrant, despite the Hagerstown Police Department previously having notice that Plaintiff was not the individual for whom the warrant was issued." *Id.* ¶ 13.

## II.    LEGAL STANDARD

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6), which permits defendants to test the legal sufficiency of a complaint.[2] *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221,

---

[2] In the alternative, Defendants seek summary judgment, and attach additional exhibits to their Motion. ECF 2. As presented, the Court declines to exercise its discretion to consider the extraneous materials and to convert the Motion into a Motion for Summary Judgment, without first permitting Robinson an opportunity to seek leave to amend his Complaint, if he is able to state a valid claim. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (explaining that before a court may convert a motion to dismiss into one for summary judgment, the opposing party must be afforded reasonable opportunity to present material pertinent to such a motion).

133 S.Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *see Ashcroft v. Iqbal,* 556 U.S. 662, 684, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555, 127

S.Ct. at 1964. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937, 132 S.Ct. 1960, 182 L.Ed.2d 772 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only]

to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies ... if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250).

## III. ANALYSIS

As evidenced from the summary above, Robinson's factual allegations lack specificity in several respects. Robinson does not allege which actions were taken by Branche, as opposed to the other HPD officers involved in the events at MHWC. He does not allege the specific nature of the information he provided to the officers about his identification, or the details about the Pennsylvania warrant known to the HPD officers, while they were at MHWC, as opposed to the information they learned once they returned to the station. And he does not allege any details regarding the two subsequent arrests he endured, including the dates or the identity of the arresting police department(s) and officers. In the absence of specific factual allegations necessary to support plausible claims for relief, and in light of the legal flaws described below, Robinson's Complaint must be dismissed.

Count I asserts a claim pursuant to 42 U.S.C. § 1983, which allows an action to be brought against a person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. A plaintiff attempting to state a claim under § 1983 must allege (1) a violation of a right secured by the Constitution or laws of the United States, (2) by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019). The parties do not dispute that HPD and Branche were acting under color of state law when

they arrested Robinson.  Instead, the issue is whether Robinson has sufficiently alleged a violation of his constitutional rights.

Robinson's Complaint does not make reference to any particular constitutional provision, although its reference to "the rights against unreasonable searches and seizures" can be construed to present a Fourth Amendment claim.  ECF 6 ¶ 18. In considering whether Robinson has pled facts to plausibly establish infringement of his constitutional rights, binding precedent addressing mistaken identities in arrests is significant.  First, in *Hill v. California,* 401 U.S. 797, 802 (1971), the Court determined that "(w)hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest" under the Fourth Amendment. *See also Thompson v. Prince William Cnty.,* 753 F.2d 363, 364 (4th Cir. 1985) ("Not every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under 42 U.S.C. § 1983."). Similarly, in *Baker v. McCollan*, 443 U.S. 137 (1979), Linnie McCollan was arrested on a valid warrant and detained for three days, over New Year's weekend, as a result of misidentification resulting from identity theft that had been committed by his brother. *Id.* at 140–41. McCollan sued the sheriff, contesting the sheriff's "failure to institute an identification procedure that would have disclosed the error." *Id.* at 141–42. The Supreme Court concluded that the arrest and resulting detention did not amount to a violation of McCollan's constitutional rights. *Id.* at 144. Although the Court acknowledged that, "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty . . . without due process of law," it opined, "we are quite certain that a detention

of three days over a New Year's weekend does not and could not amount to such a deprivation." *Id.* at 145. Further, the Court said: "[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* at 145–46. It added that the "official charged with maintaining custody of the accused named in the warrant" is not "required by the Constitution to perform an error-free investigation of such a claim." *Id.* at 146.

The alleged seizure, and concomitant deprivation of liberty, in this case is far less severe than that the Supreme Court deemed insufficient to warrant constitutional protection in *McCollan*. The Complaint does not contain any facts plausibly suggesting that the officers' identification of Robinson as the person named in the warrant was objectively unreasonable, although both sides agree that it was ultimately mistaken. Further, the Complaint is devoid of any allegations relating to the amount of time Robinson was actually detained. In fact, because the Complaint refers to his "immediate" release upon the discovery of his erroneous arrest during the initial booking process, ECF 6 ¶ 12, it is clear that he spent at most hours, and far less than three days, in custody. Moreover, other similar cases have found failure to allege or establish a constitutional violation on similar facts. *See, e.g., Brown v. Wiita,* 7 F. App'x 275, 279 (4th Cir. 2001) (rejecting § 1983 claim where plaintiff had been arrested, processed, and eventually released on bond before being recognized as a case of mistaken identity, noting that that although the arrestee "protested his innocence" and the officer "could have waited to receive the ... photograph," this "does not detract from the reasonableness of [the officer's] belief that he was arresting the correct person.")*; Johnson v. Hammett*, Civil No. ELH-18-1059, 2019 WL 7185559, at *13 (D. Md. Dec. 23, 2019) (finding that plaintiff's detention for about 51 hours, on a mistaken arrest, did not amount to a

constitutional violation, and reasoning, "An arrest pursuant to a facially valid warrant, even if it is the product of mistaken identity, does not give rise to a constitutional violation. And, plaintiff points to no authority that required [the officer] to investigate plaintiff's claims of mistaken identity at the scene, before transporting him to Central Booking."); *see also State v. Dett*, 391 Md. 81, 95–96 (2006) ("it is reasonable for the person charged with executing the warrant to rely on the name given in the warrant unless he knows or is convinced beyond a reasonable doubt that a mistake has been made"). Thus, on the cursory facts alleged in the Complaint, Robinson has not pled facts to suggest that his arrest at MHWC was unreasonable, as required to state a claim for a plausible constitutional violation by either Defendant. Other specific pleading deficiencies, with respect to each Defendant, are addressed below.

### A. Claims Against Branche

Branche also asserts that he is protected from suit by the doctrine of qualified immunity. ECF 2-1 at 6–11. That doctrine "'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Essentially, "[q]ualified immunity shields government officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (citation omitted). Relevant here, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In situations of government error, "[t]he protection of qualified immunity applies

regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (citation omitted).

However, not all errors are subject to the protection of qualified immunity. The application of the doctrine turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "takes cognizance of human imperfections," *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014), and protects government officials who make 'bad guesses in gray areas." *Brawn v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (citation omitted). Because qualified immunity is an "'immunity from suit rather than a mere defense to liability,'" *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Id.*

Thus, consideration of the doctrine of qualified immunity involves assessing, in some order: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier*, 533 U.S. at 201; and (2) whether the officer's actions "violate[d] clearly established law," *Pearson*, 555 U.S. at 243; *see also Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019) (stating courts "need not address those inquiries in sequence, but instead may exercise [their] 'sound discretion' in deciding which issues to first address"). The first prong, involving the violation of a constitutional right, has been addressed above, in Branche's favor. In addition, Robinson's claim, as currently stated, is likely to fail on the second prong as well. This is a context in which there is ample clearly established law, as many courts have addressed the issue of arrest on the basis of mistaken identity. The central question, in determining whether any particular officer's conduct violated such law, is "whether it would be clear to a reasonable official that his conduct was

unlawful in the situation he confronted." *See Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015). To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Merchant*, 677 F.3d at 665 (quoting *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)). In particular, the reasonableness of an officer's belief "that he was arresting the correct person must be judged by an objective standard in light of the facts he possessed at the time of the arrest." *Brown v. Witta,* 7 F. App'x. 275, 278 (4th Cir. 2001). "And importantly, this inquiry must not result in a 'second-guessing' of the officer's actions 'with the benefit of 20/20 hindsight.'" *Id.* (citation omitted). As the Fourth Circuit recognized, "Mistaken identity errors, of course, will inevitably occur from time to time, but the law sensibly recognizes that 'not every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person. . . automatically constitutes a constitutional violation for which a remedy may be sought" under Section 1983. *Id.*

Here, Robinson argues that Branche is not entitled to qualified immunity because "the officers, among them Defendant Branche, reviewed the Plaintiff's identifying information, including his social security number, against that of the warrant, which, it can be inferred, would have included a photograph." ECF 5-1 at 4. Despite that somewhat speculative contention in Robinson's opposition to the Motion, his Complaint makes no such allegations about what specific information Defendant Branche had in his possession to compare at the scene of the arrest, either from Plaintiff about his identity or from Pennsylvania about the person named in the warrant *See Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (noting that a plaintiff "cannot, through the use of motion briefs, amend the complaint."). Although the Complaint suggests that Robinson had provided his social security number to the investigating officers at MHWC, it does not establish, for example, whether the officers had access to the social security number of the

person for whom the warrant had been issued while at the scene, and does not allege whether the two social security numbers were materially distinct. *See* ECF 6 ¶   More significantly, because the Complaint makes only general reference to actions by "officers," it contains no specific factual allegations to suggest that Branche personally took, or failed to take, any actions to confirm Robinson's identity.  It also contains no allegation that Branche, if he did not personally engage in the relevant actions, would be subject to bystander liability under the standards enunciated in *Randall v. Prince George's Cnty., Maryland,* 302 F.3d 188, 204 (4th Cir. 2002). Thus, Robinson has not pled facts suggesting that Branche's conduct was unreasonable or amounted to a plausible violation of his constitutional rights.

That same flaw is fatal to Robinson's claim of false arrest against Branche.  In Maryland, false arrest is a common law tort, which requires a plaintiff to prove that he was deprived of his liberty without his consent and without legal justification. *See Tavakoli-Nouri v. State*, 139 Md. App. 716, 726 (2001). The imprecision in the Complaint leaves it bereft of any factual support for the elements of a false arrest claim. *See Scott v. Jenkins,* 345 Md. 21, 29 (1997).  Notably, under longstanding Maryland precedent, "An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the arresting police officer, the warrant is in fact improper." *Ashton v. Brown,* 229 Md. 70, 119 (1995).  Once again, then, the inquiry turns on whether, at the time of the arrest, Branche reasonably knew that the valid warrant named a person other than Robinson.  The Complaint is devoid of facts stating a plausible claim that Branche had such information.  In fact, the allegations contained in the Complaint suggest the opposite, given the prompt release of Robinson upon review of the photograph and comparison of the Social Security information at the detention center.  However, Robinson will have opportunity

to seek leave to amend his Complaint, if he is able in good faith to allege facts that might support his claims.

### B. Claims against the City

Robinson's claims against the City suffer from similar deficiencies in the facts alleged. "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994). First, as noted above, Robinson has not adequately pled that he suffered a deprivation of constitutionally protected rights, under *McCollan* and its progeny. Without a constitutional violation, a failure to train claim cannot lie. *See Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). Second, as courts in this district have made clear, a plaintiff must provide factual allegations about the specific deficiencies in a police department's training program, in order to state a failure to train claim. *See, e.g.*, *McDowell v. Grimes,* No. GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018) ("[Plaintiff] does not allege, however, any tangible affirmative decision on the part of [the police department] that led to the violation of her constitutional rights."); *Peters v. City of Mount Ranier,* No. GJH-14-955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014) ("[Plaintiff's] complaint makes no reference to an express policy, such as a written ordinance or regulation. Nor does it make any reference to a policy established through [sic] the decisions of a person with final policymaking authority."); *Hall v. Fabrizio,* No. JKB-12-754, 2012 WL 2905293, at *2 (D. Md. July 13, 2012). Robinson has not done so here, because he has not alleged any particular facts about training that the City did or did not provide to its officers.

As to his claims against the City for failure to supervise officers working with the HPD, Robinson's allegations again fall short. "Generally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). Robinson does not allege any such history (or any history whatsoever regarding the City or the HPD) as of the date of his arrest at MHWC. Moreover, his allegations of subsequent mistaken arrests under the same warrant are so sparse that they cannot be found to amount to a plausible claim, both because they do not identify the arresting police officers or department, and because they do not describe the nature or length of those arrests and resulting detentions, if any.

Thus, even taking the allegations in the Complaint as true and in the light most favorable to Robinson, he has not alleged a plausible claim of either a violation of § 1983 or false arrest against either Defendant. Thus, his Complaint must be dismissed. However, it is conceivable, under certain factual circumstances, that Robinson might be able to state claims sufficient to survive a motion to dismiss. *See, e.g.*, *Carter v. Baltimore Cnty., Maryland* 39 F. App'x. 930, 934 (4th Cir. 2001) (reversing a grant of summary judgment where a plaintiff was arrested on two occasions and held in custody for six and thirty-six days, respectively, on warrants intended for his brother, despite prior knowledge by the county that the brother had misused the plaintiff's identity). Robinson will therefore be afforded an opportunity to seek leave to amend his Complaint, to the extent he can plead facts sufficient to state a plausible, good faith claim for relief under the legal standards set forth herein.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Complaint, ECF 2, will be GRANTED, and the claims therein will be DISMISSED WITHOUT PREJUDICE. Robinson

may seek leave to amend his claims within thirty days of this Memorandum Opinion and Order. If he does not seek leave to amend, this case will be closed.  A separate Order follows.


Dated:  April 30, 2020                                          /s/
                                                                Stephanie A. Gallagher
                                                                United States District Judge