**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **JAMAAR ROBINSON** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-20-0686 |
| | * | |
| **CITY OF HAGERSTOWN, MD,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Jamaar Robinson ("Robinson") filed an Amended Complaint against Defendants City of Hagerstown, Maryland ("the City"), Tyler Branche ("Branche"), Ehab Mazloum ("Mazloum"), and Daniel Van Bobetich ("Bobetich") (collectively, "Defendants"), alleging violations of Robinson's constitutional rights pursuant to 42 U.S.C. § 1983, in addition to state law claims for false arrest. ECF 29. Defendants filed a Motion to Dismiss, ECF 25, ("the Motion"). Robinson opposed the Motion, ECF 27, and no reply was filed. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be granted as to Robinson's federal claims, and his remaining state law claims will be remanded to the Circuit Court for Washington County for adjudication.

**I.    FACTUAL BACKGROUND**

The facts below are derived from Robinson's Amended Complaint, and are taken as true for purposes of this Motion. Branche, Bobetich, and Mazloum work as officers for the Hagerstown Police Department ("HPD"). ECF 29 ¶ 3. On or about October 19, 2019, several HPD officers, including Branche and Bobetich, responded to the Maryland Health and Wellness Center ("MHWC"), to address an ongoing dispute involving Robinson. *Id.* ¶ 6. At the scene, the officers

1

reviewed Robinson's State Identification Card, which bears an "Identity Theft Victim" indicator, and spoke with other witnesses to resolve the dispute. *Id.* When the investigation concluded, Robinson proceeded to his vehicle. *Id.* ¶ 7. However, the officers reapproached him "in a tactical formation" with their hands on their firearms, and demanded to see his identification again. *Id.* ¶ 8. When Branche told Robinson that they had a warrant for his arrest, Robinson explained that there had to be a mix-up, and that he is an identity theft victim. *Id.* ¶ 10. Branche asked Robinson whether he had ever been to North Hampton, Pennsylvania, and Robinson said no. *Id.* ¶ 11. Nevertheless, Branche placed Robinson in handcuffs while attempting to confirm the warrant. *Id.* ¶¶ 11-12. Robinson waited in handcuffs for about twenty-five minutes, and his requests to sit down were denied. *Id.* ¶¶ 13, 15. Robinson continued telling the officers that there had to be a mistake, and that the information associated with the warrant should prove that he is the wrong person. *Id.* ¶ 16. The officers told Robinson they were waiting for confirmation from the National Crime Information Center. *Id.* ¶ 19. Eventually, Bobetich started "clapping" and said, "[I]t's you!! Everything's confirmed, your picture, social, birthdate, everything . . . It's you!!!" *Id.* ¶ 31. Branche placed Robinson into the rear of the patrol car, pushing his arm "painfully" into the backseat. *Id.* ¶ 32. Robinson asked to look at the information confirming the warrant, but he was denied the opportunity, and he was transported to the detention center for processing. *Id.* ¶¶ 33, 35.

Upon arrival at the Washington County Detention Center, HPD officers began to process Robinson. *Id.* ¶¶ 35-37. At that point, Robinson saw a photograph associated with the Pennsylvania warrant. *Id.* ¶ 38. Upon a review of that photograph and Robinson's Social Security number, Branche confirmed the warrant information did not match Robinson's, and released Robinson from custody. *Id.* ¶ 40.

On or about February 10, 2020, HPD officers responded to Robinson's 9-1-1 call regarding a child safety issue. *Id.* ¶ 48. The responding officer, Mazloum, arrived at the home where Robinson was located, and asked Robinson for identification. *Id.* ¶ 50. Robinson initially declined to provide identification, contending that he had simply called for assistance and no crime had been committed. *Id.* ¶¶ 51-53. When Robinson finally provided his identification, Mazloum told him there was a warrant for his arrest out of Pennsylvania. *Id.* ¶¶ 54-55. Robinson told Mazloum that he wanted to talk to a supervisor, because he had a whole folder of information pertaining to the warrant issue in his vehicle. *Id.* ¶¶ 56-57. Robinson showed the documentation to Mazloum, including the HPD police report documenting the mistaken identity situation on October 19, 2019. *Id.* ¶ 63. Nevertheless, Mazloum arrested Robinson, handcuffed him tightly, and placed him in the backset of the patrol vehicle. *Id.* ¶¶ 64-65, 68. A supervisor arrived at the scene, and Robinson explained that he had a folder of paperwork that would clear up the identity issue. *Id.* ¶ 75. The supervisor said he would look over the documents, and closed the patrol car door. *Id.* ¶ 76. Mazloum returned to the vehicle and began driving to the detention center. *Id.* ¶ 77. While en route, dispatch notified Mazloum that the warrant from Pennsylvania did not match Robinson. *Id.* ¶ 80. Mazloum drove him back to the home where he had been arrested. *Id.* ¶ 81.

## II.    LEGAL STANDARD

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6), which permits defendants to test the legal sufficiency of a complaint. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant

that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is

improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *see Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

*Pro se* filings "however unskillfully pleaded, must be liberally construed." *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). However, liberal construction does not require district courts to "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985*); see also Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), ("[L]iberal construction does not absolve Plaintiff from pleading a plausible claim."), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civil Action No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013). Moreover, a federal court may not act as an advocate for a self-represented litigant.

5

*See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III.    ANALYSIS

With respect to each of the two incidents in question, on October 19, 2019 and February 10, 2020, Robinson asserts two claims: a constitutional claim pursuant to 42 U.S.C. § 1983, and a claim for false arrest under Maryland law.  Because Robinson fails to allege constitutionally cognizable injury with respect to either event, his § 1983 claims must be dismissed.

### A.  Federal Claims

Section 1983 allows an action to be brought against a person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  A plaintiff attempting to state a claim under § 1983 must allege (1) a "violation of a right secured by the Constitution and laws of the United States," (2) by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019).  The parties do not dispute that HPD and its officers were acting under color of state law when they arrested Robinson on both occasions.  The issue is whether Robinson has sufficiently alleged a violation of his constitutional rights.

Robinson's Amended Complaint refers to two constitutional provisions: "U.S. Const. amend IV" and "U.S. Const. amend IX."[1]  *See, e.g.*, ECF 29 ¶¶ 97, 100.  Its reference to "rights

---

[1] The Amended Complaint also makes reference, under its § 1983 counts, to various provisions of the Maryland Constitution. *See, e.g.*, ECF 29 ¶¶ 97-100.  To the extent Robinson intended to assert state constitutional claims, they are not cognizable under § 1983, which provides a mechanism to address violations of federal rights by state actors.

against unreasonable searches and seizures" suggests the contours of his intended Fourth Amendment claim, *id.* ¶ 99, but the Amended Complaint contains no explanation of his Ninth Amendment claim, which is not legally cognizable. *See, e.g.*, *James-Bey v. N.C. Dep't. of Pub. Safety*, Civil No. 1:19-cv-00020-FDW, 2019 WL 5198490, at \*4 (Oct. 15, 2019) ("The Ninth Amendment does not confer substantive rights and cannot form the basis of a § 1983 action.").

In considering whether Robinson has pleaded facts to plausibly establish infringement of his Fourth Amendment rights, binding precedent addressing mistaken identities in arrests is significant. First, in *Hill v. California*, the Supreme Court determined that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest" under the Fourth Amendment. 401 U.S. 797, 802 (1971) (alteration in original) (quoting *People v. Hill*, 446 P.2d 521, 523 (Cal. 1968)); *see also Thompson v. Prince William Cnty.*, 753 F.2d 363, 364 (4th Cir. 1985) ("Not every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under 42 U.S.C. § 1983."). Similarly, in *Baker v. McCollan*, Linnie McCollan was arrested on a valid warrant and detained for three days, over New Year's weekend, as a result of misidentification resulting from identity theft that had been committed by his brother. 443 U.S. 137, 140-41 (1979). McCollan sued the sheriff, contesting the sheriff's "failure to institute an identification procedure that would have disclosed the error." *Id.* at 141-42. The Supreme Court concluded that the arrest and resulting detention did not amount to a violation of McCollan's constitutional rights. *Id.* at 144-45. Although the Court acknowledged that, "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence

will after the lapse of a certain amount of time deprive the accused of 'liberty without due process of law,'" it opined, "we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation." *Id.* at 145. Further, the Court said: "[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* at 145–46. It added that the "official charged with maintaining custody of the accused named in the warrant" is not "required by the Constitution to perform an error-free investigation of such a claim." *Id.* at 146.

The alleged seizure, and concomitant deprivation of liberty, in this case is far less severe than that the Supreme Court deemed insufficient to warrant constitutional protection in *McCollan*. Even with the additional facts Robinson added upon amendment, the Amended Complaint does not contain any facts plausibly suggesting that the officers' identification of Robinson as the person named in the warrant on October 19, 2019 was objectively unreasonable, although both sides agree that it was ultimately mistaken. The Amended Complaint remains devoid of any allegations relating to the total amount of time Robinson was actually detained. It is clear, though, that he spent at most hours, and far less than three days, in custody. Other cases have found failure to allege or establish a constitutional violation on similar facts. *See, e.g.*, *Brown v. Wiita*, 7 F. App'x 275, 279-80 (4th Cir. 2001) (reversing denial of summary judgment for defendant officer where plaintiff had been arrested, processed, and eventually released on bond before being recognized as a case of mistaken identity, noting that although the arrestee "protested his innocence" and the officer "could have waited to receive the . . . photograph," this "does not detract from the reasonableness of [the officer's] belief that he was arresting the correct person"); *Johnson v. Hammett*, Civil No. ELH-18-1059, 2019 WL 7185559, at *13 (D. Md. Dec. 23, 2019) (finding

that plaintiff's detention for about fifty-one hours, on a mistaken arrest, did not amount to a constitutional violation, reasoning that "[a]n arrest pursuant to a facially valid warrant, even if it is the product of mistaken identity, does not give rise to a constitutional violation. And, plaintiff points to no authority that required Hammett to investigate plaintiff's claims of mistaken identity at the scene, before transporting him to Central Booking"); *cf. State v. Dett*, 891 A.2d 1113, 1122-23 (Md. 2006) (finding that under state law "it is reasonable for the person charged with executing the warrant to rely on the name given in the warrant 'unless he knows or is convinced beyond a reasonable doubt that a mistake has been made.'" (quoting Restatement (Second) of Torts § 125 cmt. f (Am. L. Inst. 1965))). Thus, Robinson has not pleaded facts to suggest that his October 19, 2019 arrest and detention at central booking amounted to a constitutional violation.

Robinson's § 1983 claim pertaining to his February 10, 2020 arrest is deficient for the same reason. The facts alleged about that incident are even further from establishing constitutional injury, because the mistaken identity was discovered, and Robinson was released, before even arriving at the detention center.[2]

Because Robinson has not adequately pleaded that he suffered a deprivation of constitutionally protected rights, his *Monell* claim against the City is also deficient. Without a constitutional violation, a failure to train claim cannot lie. *See Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be

---

[2] This Court incorporates by reference its analysis of qualified immunity from its April 30, 2020 Memorandum Opinion, ECF 12 at 8-11. The analysis applies equally to allegations against the Defendant officers in the Amended Complaint, although this Court will not reiterate it here. Even with the additional facts added upon amendment, Robinson has not alleged facts suggesting that it was "manifest" to those officers that he was not the individual named in the arrest warrant. The fact that, on both occasions, the officers promptly released Robinson when the mistaken identity became evident is strong, if not conclusive, evidence that their actions would be protected by qualified immunity.

made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). Similarly, Robinson has not alleged "a history of widespread abuse" sufficient to plausibly state a failure to supervise claim against the City. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) ("Generally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse."). While not diminishing the frustration Robinson must feel that he experienced more than one mistaken arrest as a result of the same warrant, two occasions cannot amount to a "widespread" problem, and other occasions involving other law enforcement agencies cannot be fairly attributed to the City.

Thus, even taking the allegations in the Complaint as true and in the light most favorable to Robinson, he has not alleged a plausible federal claim against any of the Defendants.

### B. Supplemental Jurisdiction

Defendants also ask this Court to dismiss Robinson's state law false arrest claims. Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" over state claims if, *inter alia*, the court "has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c). The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Id.* (footnote omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of

state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

The Fourth Circuit has confirmed that the Court, in these circumstances, is permitted to remand the case to state court. "[T]he Court decided in *Carnegie-Mellon* . . . that, in a case in which the federal claims had been deleted from the complaint by the plaintiff, before trial, following a removal from a state court, the district court had the discretion to remand the pendent state-law claims to the state court." *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 316 (4th Cir. 2001). After considering the *Carnegie-Mellon* factors, 484 U.S. at 350, this Court will decline to exercise supplemental jurisdiction over the remaining claims in the Amended Complaint. While remanding the state law claims may require another court to familiarize itself with the facts of this case and delay the ultimate resolution of this action, these downsides are offset by the fact that the case has been in this Court only since March 16, 2020. The case has not progressed, even to the point of a scheduling order, because of the amendments of the complaint and the motions to dismiss. It now consists only of claims brought pursuant to Maryland common law. Robinson originally elected to file his suit in Maryland state court, and Defendants are Maryland citizens. Maryland has a strong interest in deciding the state law issues and defining the scope of common law false arrest, and the case is better suited for disposition in the Circuit Court for Washington County, where it was originally filed. Thus, Robinson's state law claims will be remanded, and Defendants' Motion to Dismiss will be denied as moot as to those claims. *See, e.g.*, *Hackett v. Bayview Loan Servicing, LLC*, No. 18-cv-01286-PX, 2018 WL 6812617, at *4 (D. Md. Dec. 27, 2018); *Williams v. Anderson*, No. 3:12CV574, 2012 WL 5928644, at *4 (E.D. Va. Nov. 26, 2012).

## IV.      CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Amended Complaint, ECF 25, will be GRANTED as to Counts I and III and DENIED as moot, without prejudice, as to Counts II and IV. The case will be remanded to the Circuit Court for Washington County for adjudication of Robinson's false arrest claims, and this federal case will be closed. A separate Order follows.


Dated: October 28, 2020                                    _____/s/_____

                                                           Stephanie A. Gallagher
                                                           United States District Judge